UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 15-3684(DSD/SER)

Stephen Walter,

                Plaintiff

v.                                                    **ORDER**

Thrifty Drug Stores, Inc.
and White Drug Enterprises, Inc.
d/b/a Thrifty White Pharmacy,

                Defendants.


        Jon E. Paulson, Esq. and Paulson Law Firm, PLLC, 1434
        Appaloosa Trail, Eagan, MN 55122, counsel for plaintiff.

        David G. Waytz, Esq., Krista A.P. Hatcher, Esq. and Fredrikson
        & Byron, PA, 200 South 6th Street, Suite 4000, Minneapolis, MN
        55402, counsel for defendants.


        This matter is before the court upon the motion to dismiss by

defendants Thrifty Drug Stores, Inc. and White Drug Enterprises,

Inc. d/b/a Thrifty White Pharmacy (Thrifty White).  Based on a

review of the file, record, and proceedings herein, and for the

following reasons, the motion is granted.


                        **BACKGROUND**

        This employment dispute arises from plaintiff Stephen Walter's

tenure with Thrifty White.  Walter, who is Jewish, suffers from

generalized anxiety disorder, panic disorder, and major depression.

Compl. ¶ 2.  Walter was Thrifty White's IT Director from May 9,

2014, to December 2014.  Waytz Decl. Ex. A, at 1; Compl. ¶¶ 3, 102.

In June 2014, Walter requested and was granted the day off for September 25, to celebrate Rosh Hashanah.  Walter Aff. Ex. 1.[1]  On August 7, Thrifty White invited employees to a company-wide party on September 25.  Id. Ex. 2, at 1.  The invitation indicated that employees were encouraged but not required to attend the party.  See id. ("We would like to encourage all to attend this annual event.  It's a nice time to get away and socialize.").  Walter conveyed his regrets given that the party conflicted with Rosh Hashanah, but also stated that he "look[ed] forward to future opportunities to network with [his] peers."  Id. at 4.

A few days later, Walter complained that his inability to attend the party would have a "negative impact on [his] ability to associate and build relationships with [his] colleagues" and that he would miss out on "the feeling of association with the organization and acknowledgment for hard work."  Id.  Walter nevertheless seemed to understand that the party was not mandatory.  See id. (noting that the party was "open to employees" and that attendance was "strongly encouraged").  Thrifty White responded to Walter's concerns by explaining that the conflict with Rosh Hashanah was inadvertent and would not be repeated.  Id. at 3.  Thrifty White also reassured Walter that "there will be plenty of

---

[1]  The court will consider the documents attached to Walter's complaint.  See Silver v. H & R Block, Inc., 105 F.3d 394, 397 (8th Cir. 1997) (holding that when a complaint relies on documents whose content is undisputed, the court may consider such documents without converting the motion into one for summary judgment).

opportunities to get to know people at the company at future events" and that he was a "valued employee." Id. Walter replied that he appreciated the comments and wanted the opportunity to discuss the matter further. Id.

Walter alleges that he was also forced to attend a meeting in which the COO accused him of making up Rosh Hashanah. Compl. ¶ 29. Walter acknowledges, however, that the circumstances surrounding the party and his inability to attend "had no impact on his routine job duties." Id. ¶ 29.

Walter asserts that his panic disorder flared up due to the party incident and that he ultimately required accommodations in order to perform his job duties. Id. ¶ 29. On October 14, 2014, Walter and his supervisor met with Dave Rueter, Thrifty White's executive vice president of personnel, to discuss Walter's accommodation request. Walter Aff. Ex. 3, at 2-3. Rueter offered him the following accommodations: (1) immediate relocation to a cubical in a quieter part of the IT area,[2] (2) noise cancelling headphones of Walter's choice, (3) increased volume of the office white-noise system, and (4) excused absences for medical appointments as needed with as much advance notice as possible. Id. at 3. Rueter also noted that although Walter's "essential job functions" required him to spend the "majority of his time in the office[,]" he may request to work from home an a "limited, as

---

[2] No private offices were available. Id. at 3.

3

needed basis." Id. Walter was satisfied with the accommodations. See id. at 2 ("I will continue to communicate issues if they arise but I feel the desk move and other items discussed above should be more than sufficient going forward."). He now contends that he was "caught off guard" and did not feel able to decline the offered accommodations. Compl. ¶ 35.

On October 28, Walter told Rueter that the headphones and cubical move were an improvement, but "not the optimal solution." Id. Ex. 8. He alluded to "inferred performance issues" and inflexibility with respect to his accommodations. Id. He also asked to revisit working from home one or two days per week, as recommended by his doctors. Id. Rueter responded that he would need to discuss the request to work from home with Walter's supervisors, with his permission. Id. Ex. 9, at 1. He also expressed confusion regarding Walter's complaints about inflexibility and performance issues. Id. Rueter reiterated his previous willingness to continue discussing Walter's accommodation needs, but also noted that the employer, rather than medical providers, decide whether an accommodation is feasible. Id.

Thereafter, Walter took a medical leave of absence "[d]ue to the antagonizing atmosphere that precipitated depression and anxiety disorder symptoms." Compl. ¶ 51. During Walter's leave, Rueter corresponded with Walter's doctor, Zvi Frankfurt, to better understand Walter's updated request for accommodations. Walter

4

Aff. Ex. 10, at 2-3.  Frankfurt stated that Walter required (1) the
ability to work from home 2-3 days per week on a regular basis, (2)
a private work location, and (3) the continued ability to take time
off during regular business hours to attend doctor's appointments.
Id. at 3.   Rueter sent an email to Walter reiterating the above
requested accommodations and offering to schedule a meeting to
discuss them on his return from leave.  Id. at 1.  Walter responded
that he needed "greater context" for the meeting.  Id.  Walter quit
sometime shortly thereafter.  The record does not reflect whether
Thrifty White had the opportunity to reply to Walter before he
quit.

Walter then filed a charge of discrimination with the
Minnesota Department of Human Rights, which he appears to have
cross-filed with the Equal Employment Opportunity Commission.
Waytz Decl. Ex. A; Walter Aff. Ex. 13.   In the charge, Walter
complained of religious discrimination based on the holiday party
incident and failure to accommodate his disability.  Waytz Decl.
Ex. A, at 1-2.  The EEOC dismissed the charge and issued a right-
to-sue notice.  Walter Aff. Ex. 13.  On September 17, 2015, Walter
filed this suit alleging religious discrimination, failure to
accommodate under the Americans with Disabilities Act (ADA),
violation of the Health Insurance Portability Accountability Act
(HIPAA), hostile work environment, and "forced self-slander."
Thrifty White now moves to dismiss.

## DISCUSSION

## I.   Standard of Review

To survive a motion to dismiss for failure to state a claim, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are not sufficient to state a claim. Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted).

The court does not consider matters outside the pleadings under Rule 12(b)(6). Fed. R. Civ. P. 12(d). The court may, however, consider matters of public record and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (citation and internal quotation marks omitted). Here, the court considers the charge of discrimination, the right-to-sue letter, and the

documents attached to the complaint.[3]

## II.  Religious Discrimination

To establish a claim of religious discrimination, Walter  must
prove that: (1) he had a bona fide religious belief that conflicted
with an employment requirement; (2) he informed his employer of the
conflict; and (3) he suffered an adverse employment action.  Ollis
v. Hearthstone Homes, Inc., 495 F.3d 570, 575 (8th Cir. 2007).  It
is undisputed that Walter has a bona fide religious belief that
conflicted with the company holiday party.  The parties dispute
whether Walter has adequately pleaded that the party was an
employment requirement or that he suffered adverse employment
action for not attending the party.

Despite claiming to the contrary in his memorandum of law,
Walter does not allege that the party was an employment
requirement.  Indeed, the complaint acknowledges that the party was
"open" to employees and that attendance was "strongly encouraged."[4]
Compl. ¶ 27.  This allegation is consistent with the invitation
which encourages, but does not mandate, attendance.  Walter Aff.

---

[3]    Walter's argument that the court cannot consider the
MHRA/EEOC charge in the context of a motion to dismiss is
unavailing.  See Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th
Cir. 2002) (concluding that "an EEOC charge is part of the public
record, and thus the motion to dismiss was not converted to one for
summary judgment by the attachment of a copy of the EEOC charge").

[4]    Walter's conclusory allegation that the party was a "de
facto required work event," Compl. ¶ 62, is undermined by his more
specific allegation that the party was not mandatory.

Ex. 2, at 1.

The court also finds that Walter has failed to adequately plead the existence of an adverse employment action. Walter alleges that his inability to attend the party curtailed his ability to network with his colleagues, which caused him to feel isolated. Compl. ¶ 27. For an employment action to be considered adverse, it must have a material effect on the terms or conditions of employment. Cross v. Cleaver, 142 F.3d 1059, 1073 (8th Cir. 1998). An action involving nothing more than a mere inconvenience without any diminution in title, salary or benefits is insufficient to establish an adverse employment action. Harlston v. McDonnell Douglas Corp., 37 F.3d 379, 382 (8th Cir. 1994). "Not everything that makes an employee unhappy is an actionable adverse action ... otherwise, minor and even trivial employment actions ... would be the basis of a discrimination suit." Greaser v. Mo. Dept. of Corrections, 145 F.3d 979, 984 (8th Cir. 1998).

Walter does not allege any material effect on his employment. To the contrary, he specifically states that his absence from the party "had no impact on his routine job duties." Compl. ¶ 29. Walter's subjective feelings of exclusion are insufficient to establish an adverse employment action.[5] See Spears v. Mo. Dep't

---

[5] Walter also alleges that it was unfair that he had to take a vacation day for Rosh Hashana when employees attending the party did not have to take time off even though they left the office early. Compl. ¶ 27. This fact, even if true, does not qualify as an adverse employment action. Walter took the entire day off,

of Corr. & Human Res., 210 F.3d 850, 853 (8th Cir. 2000)("An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." ). As a result, Walters has failed to adequately allege a claim for religious discrimination.

## III. Failure to Accommodate

The ADA prohibits employers from discriminating against individuals on the basis of disability. See 42 U.S.C. § 12112. The ADA requires employers to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" unless the employer establishes that the accommodation would impose an "undue hardship." 42 U.S.C. § 12112(b)(5)(A). "In a reasonable accommodation case, the 'discrimination' is framed in terms of the failure to fulfill an affirmative duty — the failure to reasonably accommodate the disabled individual's limitations." Peebles v. Potter, 354 F.3d 761, 767 (8th Cir. 2004). The ADA "compels employers to modify their work requirements to enable disabled individuals to have the same opportunities as their non-disabled counterparts."

To properly allege a failure to accommodate, Walter must assert that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual, and (3) suffered an adverse

---

whereas employees who went to the party left at 4:00 that day. Any inequity is de minimis and does not constitute an adverse employment action.

employment action as a result of the disability.  Huber v. Wal Mart
Stores, Inc., 486 F.3d 480, 482 (8th Cir. 2007).  The parties do
not dispute, for present purposes, that Walter has adequately
alleged the first two elements.  Thrifty White again argues,
however, that Walter has failed to allege that he suffered an
adverse employment action.  The court agrees for two reasons.

First, Walter quit while on leave, and "a plaintiff cannot
state an adverse employment action if he voluntarily resigned."[6]
Fenney v. Dakota, Minn. & E. R. Co., 327 F.3d 707, 717 (8th Cir.
2003).  Second, the complaint and supporting documents show that
Thrifty White did not fail to accommodate Walter.  When an employee
requests an accommodation, as here, the employer is obligated to
engage in an "informal, interactive process between the employer
and the employee identifying the limitations arising from the
disability and potential reasonable accommodations that could
overcome those limitations."  Ballard v. Rubin, 284 F.3d 957, 960
(8th Cir. 2022) (internal quotation marks omitted).  To establish
that the employer failed to engage in that process, the employee
must show, among other things, that "the employer did not make a
good  faith  effort  to  assist  the  employee  in  seeking

_____

    [6]    Walter  does  not  allege  that  he  was  constructively
discharged, nor do the facts alleged support such a theory.  See
Carpenter v. Con-Way Cent. Express, Inc., 481 F.3d 611, 616 (8th
Cir. 2007) ("Constructive  discharge  occurs  when  an  employer
deliberately  renders  the  employee's  working  conditions
intolerable, thereby forcing [him] to quit.").

accommodations." Id. Walter is unable to do so here. Walter alleges that Thrifty White provided accommodations in mid-October. Walter also alleges that Thrifty White explored his subsequent request for additional accommodations, and that he abruptly quit before Thrifty White could come to a decision. As a result, the complaint does not plausibly allege that Thrifty White failed to accommodate Walter's disability, and dismissal is warranted.

## IV. HIPAA

Walter next alleges that defendants violated HIPAA by sharing his medical information with his supervisors. He admits, however, that HIPAA does not create a private right of action. Dodd v. Jones, 623 F.3d 563, 569 (8th Cir. 2010). As such, this claim must be dismissed.

## V. Hostile Work Environment

Walter also alleges that he was subject to a hostile work environment due to his disability. Defendants argue that this claim should be dismissed because Walter has not exhausted his administrative remedies. Specifically, defendants contend Walter did not allege a hostile work environment claim in his charge of discrimination. The court agrees.

An employee alleging a claim for unlawful discrimination under the ADA must first file an administrative charge with respect to "the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1); see also Shelton v. Boeing Co., 399 F.3d 909, 912 (8th

Cir. 2005) ("Exhaustion of administrative remedies is a condition precedent to the filing of an action under the [ADA] in federal court."); Walton v. U.S. Dep't of Agric., No. 02-CV-163, 2007 WL 1246845, at *8 (E.D. Mo. Apr. 30, 2007) ("If Plaintiff did not obtain a 'final decision' by the EEOC with regard to her claims, she has not yet exhausted her administrative remedies with regard to these claims."). Each alleged incident of discrimination constitutes a separate actionable "unlawful employment practice" within the meaning of the charge-filing requirement of Title VII. Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850-52 (8th Cir. 2012).

Walter's administrative charge alleges that he was discriminated against on the basis of his religion and disability. See Waytz Decl. Ex. A. It makes no mention of a hostile work environment claim, nor do the facts alleged support such a claim. See id. The court is not required to "invent[], ex nihilo, a claim which simply was not made." Shannon v. Ford Motor Co., 72 F.3d 678, 685 (8th Cir. 1996). As a result, dismissal of Walter's hostile work environment claim is warranted.

## VI. Compelled Self-publication

Finally, Walter alleges that Thrifty White forced him to defame himself because he will need to respond to prospective employers' questions about his previous employment. Thrifty White argues that Walter has failed to adequately plead this claim

because he has not identified any defamatory statement, does not allege that he has been compelled to repeat a defamatory statement, and does not identify to whom he was forced to make such a statement.

To support a claim of defamation under Minnesota law, a plaintiff must show evidence of harm from a false statement published to a third person. Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 255 (Minn. 1980). A defamatory statement must be made to someone other than the plaintiff, must be false, and must tend to harm the plaintiff's reputation in the estimation of the community. Id. The "general rule" is that "the communication of a defamatory statement to a third person by the person defamed is not actionable." Lewis v. Equitable Life Assur. Soc., 389 N.W.2d 876, 886 (Minn. 1986). However, Minnesota recognizes a "narrow exception" known as the doctrine of compelled self-publication. Id. "Where the defamed person is compelled to communicate the defamatory statement to a third party, and where it is foreseeable to the defendant that the defamed person would be required to do so, the defendant may be liable." Simpson v. Sodexho Operations, LLC, No. 08-653, 2009 WL 2337132, at *4 (D. Minn. July 29, 2009). A plaintiff must plead his defamation claim with a "certain degree of specificity, including pleading who made the alleged defamatory statement, to whom the statements were made, and where the statements were made." Magee v. Trs. of the Hamline Univ., Minn.,

957 F. Supp. 2d 1047, 1074 (D. Minn. 2013).

Walter has failed to allege a viable claim of compelled self-publication. Specifically, Walter does not allege any defamatory statements, either generally or with the specificity required in such actions. In his complaint, he asserts that he believed he would have a long tenure with defendants and that he was forced to quit due to discrimination. Compl. ¶¶ 99-102. He then asserts that his job history has been tarnished and that he will have to explain his departure to prospective employers. Id. ¶¶ 103-04. He fails to assert, however, any false statements he believes he will be forced to make in the future.[7] Absent a false statement, there can be no defamation. See Stuempges, 297 N.W.2d at 255 (requiring false statement to establish defamation); see also Graning v. Sherburne Cty., 172 F.3d 611, 617 (8th Cir. 1999) ("A true statement cannot be defamatory."). Also fatal to his claim, Walter does not allege that he has actually made self-defamatory statements, only that he may have to do so in the future. See Magee, 957 F. Supp. 2d at 1074 (denying motion to amend complaint to add claim for compelled self-publication because, among other

---

[7]    In his response to the motion, Walter argues that his defamation claim is based on "a short tenure [with defendants], several forced leaves when he worked there, and rumors and innuendos in the IT community about his work." Pl.'s Opp'n Mem. at 12. Even if the court were to infuse such allegations into the complaint, they are insufficient because they lack any specificity and do not include any statements, false or otherwise, Walter has made or will make.

things, plaintiff did not allege that "she has actually been compelled to publish the statement to anyone," and as such amendment would be futile). As a result, the dismissal is warranted on Walter's defamation claim.

**VII. Leave to Replead**

Walter requests leave to file an amended complaint if the court grants Thrifty White's motion. The court believes that any such amendment would be futile given the already ample pleadings. Walter's request is denied.

**CONCLUSION**

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1.   The motion to dismiss [ECF No. 10] is granted; and

2.   The case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  March 16, 2016

                                    s/David S. Doty
                                    David S. Doty, Judge
                                    United States District Court